UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Case No. C17-209RSM

CITY OF EVERETT, a Washington municipal corporation,

Plaintiff,

v.

PURDUE PHARMA L.P., a Delaware limited partnership; PURDUE PHARMA, INC., a New York corporation; THE PURDUE FREDERICK COMPANY, INC., a New York corporation; and JOHN AND JANE DOES 1 THROUGH 10, individuals who are executives, officers, and/or directors of Purdue,

Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

This matter comes before the Court on Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company Inc. (collectively, "Purdue")'s Motion to Dismiss, brought under Rule 12(b)(6).  Dkt. #8.  Defendants argue that all of the City of Everett's claims must be dismissed on, *inter alia*, proximate cause and statute of limitations grounds, and that certain other claims should be dismissed for failing to state a claim.  In Response, Plaintiffs

argue that the Complaint adequately satisfies the Rule 12(b)(6) standard for each claim. Dkt. #16. The Court heard oral argument on September 18, 2017. Dkt. #26. For the reasons stated below, the Court disagrees with Purdue that Everett's claims suffer from a lack of proximate cause or violate the statute of limitations, and GRANTS IN PART AND DENIES IN PART Defendants' Motion.

## II.    BACKGROUND[1]

Plaintiff City of Everett, located in Snohomish County, Washington and incorporated pursuant to RCW 35.22, brings this action "in its sovereign capacity and for the benefit of the public, pursuant to powers delegated by the State of Washington…" Dkt. #1-1 at ¶ 12.

Defendant Purdue companies are in the business of manufacturing, selling, promoting, and/or distributing OxyContin, a pharmaceutical medication approved by the Food and Drug Administration ("FDA") for the treatment of chronic pain when prescribed by a licensed physician. *Id.* at ¶¶ 13-15, 23, 25. OxyContin is classified as a Schedule II narcotic under the Controlled Substances Act (the "CSA"), 21 U.S.C. § 823 *et. seq.*, and subject to extensive federal regulation by FDA and DEA. *Id.* at ¶¶ 21, 25.

In 2007, Purdue and several of its executives pled guilty to federal criminal charges that they misled regulators, doctors, and patients about OxyContin's risk of addiction and its potential to be abused. *Id.* at ¶ 29. Purdue also acknowledged that it marketed and promoted OxyContin "with the intent to defraud or mislead." *Id.* To resolve criminal and civil charges regarding the mislabeling and deceptive marketing of OxyContin, Purdue agreed to pay fines and fees in excess of $600 million. *Id.*

---

[1] The following background facts are taken from Plaintiff's Complaint, Dkt. #1-1, and accepted as true for purposes of ruling on Defendants' Rule 12(b)(6) Motion to Dismiss. The Court need not discuss all facts presented in the Complaint, and will focus on those facts relevant to the instant Motion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 2

That same year, Purdue was sued by several states, including the State of Washington, over similar claims. *Id.* at ¶ 30. Purdue ultimately agreed to pay $19.5 million as a multi-state settlement and also settled with Washington pursuant to a Consent Judgment. *Id.* In the Consent Judgment, among other obligations, Purdue agreed to enact safeguards to protect against the diversion of OxyContin. *Id.* In any event, Purdue was already required by federal law to alert the DEA of suspicious orders under 21 U.S.C. § 823 and regulations promulgated by the DEA. *Id.* at ¶¶ 34-35.

The City of Everett alleges, on information and belief, that Purdue "knowingly, recklessly, and/or negligently supplied suspicious quantities of OxyContin to obviously suspicious physicians and pharmacies in Everett… for the illegal diversion of OxyContin within Everett, without disclosing suspicious orders as required by regulations." *Id.* at ¶ 40.

The City of Everett brings this action in an attempt to hold Purdue liable for illegal drug trafficking of OxyContin by gang members and the "heroin crisis in Everett." *Id.* at ¶¶ 7-10, 66-67. The City seeks to recover "sizeable" social and economic costs, including "costs for law enforcement, prosecution, emergency medical services, prisons and jails, probation and public works . . . addiction treatment, detox and rehabilitation facilities, social services and housing, and prevention and education programs." *Id.* at ¶¶ 7-10, 66-67.

The Complaint alleges that Purdue should be held liable for the City's municipal costs because it failed to disclose to law enforcement information regarding "suspicious orders" of OxyContin placed with certain pharmacies in the Los Angeles area, and that such failures to report evidence of illegal diversion led to "huge quantities of OxyContin" being dispersed "into the black market within Everett," resulting in "drug abuse, addiction and crime." *Id.* at ¶¶ 3-7.

The City alleges that Purdue's failure to advise law enforcement of the "suspicious orders" of OxyContin were in violation of (1) a 2007 Consent Judgment entered between

Purdue and the State of Washington (the "Consent Judgment"), *id.* at ¶¶ 29-33, and (2) monitoring and reporting obligations under the CSA, 21 U.S.C. § 823, *id.* ¶¶ at 34-38.

The Complaint references a criminal drug ring formed in Los Angeles "in approximately 2008" that "formed a clinic called Lake Medical to use as a front for its racketeering operation." *Id.* at ¶ 41. The Complaint further alleges that "a drug dealer named Jevon Lawson ('Lawson'), who had moved to Everett from Southern California, acquired substantial quantities of OxyContin from the drug ring" and "disseminated" the illicit OxyContin to "drug abusers in Everett." *Id.* at ¶ 44. The Complaint sets forth Purdue emails from September 2009 addressing the particular pharmacies and physicians associated with Lake Medical, where a Purdue employee noted that this was "clearly diversion," saw with her own eyes "people who looked like gang members" at the clinic, and felt "very certain that this is an organized drug ring." *Id.* at ¶¶ 47-55. Everett alleges that Purdue "waited to provide information to authorities only after Lake Medical was shut down in 2010" and that "[a]s a direct result of Purdue's misconduct . . . destructive quantities of OxyContin were illegally distributed in Everett through the Lake Medical drug ring." *Id.* at ¶¶ 55-57. Although the City fails to provide any specific factual basis, it also alleges "[o]n information and belief" that Purdue also "supplied suspicious quantities of OxyContin to obviously suspicious physicians and pharmacies in Everett (and other areas within the State of Washington), without disclosing suspicious orders as required by regulations and otherwise circumventing Purdue's obligations." *Id.* at ¶ 59. The Complaint alleges that, "for several years, Purdue collected, tracked, and monitored extensive data evidencing the illegal trafficking of OxyContin." *Id.* at ¶ 5. Everett alleges that Purdue "failed to disclose such data to enforcement authorities or stop the flow of OxyContin into the black market." *Id.* at ¶¶ 5, 55, 60-61. Purdue then "continued to supply massive and disturbing

quantities of OxyContin pills to the drug ring" to "maximize its profits." *Id.* at ¶¶4, 72, 76, 81, 90.

Based on these allegations, Everett advances six causes of action: (1) gross negligence; (2) negligence; (3) public nuisance; (4) violation of the Washington Consumer Protection Act (the "CPA"), RCW 19.86, *et seq.*; (5) unjust enrichment; and (6) punitive damages under the laws of Connecticut and/or California. *Id.* at ¶¶ 69-102.

### III.  DISCUSSION

Purdue argues in the instant Motion that Everett's claims should be dismissed under Rule 12(b)(6) for lack of a cognizable legal duty, for failing to adequately plead proximate cause, for lack of a cognizable injury, and for violating applicable statutes of limitation.  Purdue also argues that Everett's public nuisance claim, unjust enrichment claim, and claim for punitive damages cannot proceed.  The Court will deal with each issue in turn.

### A.  Legal Standard

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570.

### B. A Basis for Legal Duty

Purdue argues that, under Washington law, "there is no duty to prevent a third-party from intentionally harming another unless 'a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct.'" Dkt. #8 at 14 (citing *Boy 1 v. Boy Scouts of Am.*, 832 F. Supp. 2d 1282, 1286 (W.D. Wash. 2011)). Speaking about the case generally, Purdue argues that a special relationship has not been established here, thus no legal duty and no liability exist. Purdue also argues that liability cannot arise under the Consent Judgment entered between Purdue and the State of Washington in 2007, Dkt. #9-1. Dkt. #8 at 14-15. Purdue argues that the Consent Judgment, incorporated by reference in the Complaint, provides that enforcement of its obligations is vested with the state Attorney General only. *Id.* at 15. Purdue argues that "[t]o allow municipalities within the State to bring their own actions predicated on purported failures to comply with the Consent Judgment would be inconsistent with the Consent Judgment itself and would upset the careful balance required to ensure that the State and parties with whom the State has conducted investigations can reach final, appropriate, and binding resolutions of their disputes." *Id.* Purdue also argues that the Controlled Substances Act, 21 U.S.C. § 823, cannot create a private cause of action. *Id.* at 16 (citing, e.g., *Safe Sts. Alliance v. Alternative Holistic Healing, LLC*, No. 1:15-cv-00349-REB-CBS, 2016 WL 223815, at *3 (D. Colo. Jan. 19, 2016)).

In Response, Everett notes that prior Washington cases have established tort liability under factual circumstances similar to this case. Washington has adopted Section 302B of the Restatement (Second) of Torts, which provides as follows:

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

*See Washburn v. City of Fed. Way*, 178 Wn.2d 732, 757 (2013) ("we have adopted Restatement § 302B"). In *City of Spokane v. Monsanto Co.*, 2016 WL 6275164, *9 (E.D. Wash. Oct. 26, 2016), Monsanto argued "that it did not owe any duty to Spokane because manufacturers have a duty only to the consumer for the foreseeable harm from the use of a product." But the court found "no legitimate question of duty," holding that a "manufacturer's duty of care extends to the foreseeable range of danger created by its product." 2016 WL 6275164 at *9. Everett argues that the Complaint sufficiently alleges Purdue engaged in affirmative conduct to trigger a duty under Section 302B. Dkt. #16 at 21 ("But Everett alleges much more than Purdue's undisputed "failure to report," because the Complaint is replete with allegations that Purdue "***supplied*** OxyContin to obviously suspicious physicians and pharmacies;" "***enabled*** the illegal diversion;" "***aid[ed]*** criminal activity;" and "***disseminated*** massive quantities of OxyContin…into the black market." Complaint at ¶¶ 1-7, 40-44, 60, 72, 76, 81-82, 90, 100.") (emphasis in original). Everett argues it is not actually bringing its claims under the Consent Judgment or Controlled Substances Act, but rather those sources of law are submitted as "evidence of Purdue's knowledge of the foreseeable risks and… prior admissions…" and "additional and independent grounds for denying dismissal..." Dkt. #16 at 22–23.

Purdue argues in its Reply that Section 302B should not apply because Everett has not alleged that there was an "affirmative" act of Purdue that caused the harm, *i.e.* malfeasance, as opposed to an omission, *i.e.* nonfeasance, and that this distinction is dispositive under Comment e which states that an actor "is required to anticipate and guard against the intentional, or even criminal, misconduct of others" where there is a "special responsibility" or where "the actor's

own affirmative act has created or exposed the other to a… high degree of risk of harm…" Dkt. #20 at 15 (citing *Robb v. City of Seattle*, 176 Wn.2d 427, 433 (2013)).

Taking all reasonable inferences in favor of the nonmoving party, Everett does not allege mere nonfeasance. The Court finds that Everett has adequately pled that Purdue engaged in an affirmative act which created or exposed Everett to a high degree of risk of harm. If Everett is able to prove these allegations, they trigger a legal duty under Section 302B and Washington law. In other words, Everett's claims present a facially plausible basis for legal duty under *Twombly/Iqbal, supra*. Having so found a basis for duty under common law, the Court need not determine whether a duty independently arises under the Consent Judgment or Controlled Substances Act.

### C. Proximate Cause

Purdue next argues that all of Everett's claims require proximate cause as an element, but that the Complaint fails to set forth a claim "plausible on its face" that Purdue's conduct was the proximate cause of the alleged injuries. Dkt. #8 at 18.

Washington courts have defined proximate cause as a cause that "in a direct sequence unbroken by any new independent cause, produces the injury complained of, and without which such injury would not have happened." *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 706-07 (9th Cir. 2001) (citing *Fisher v. Parkview Props., Inc.*, 71 Wn. App. 468, 859 P.2d 77, 82 (Wash. Ct. App. 1993)). Under Washington law, proximate cause requires both that the defendant's act not be "too remote and insubstantial to impose liability" and that there is no superseding cause sufficient to break the chain of causation. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 257 P.3d 532, 544-45 (2011); *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 558 P.2d 811, 816 (Wash. App. 1976). "Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 8

reasonably be foreseen by the defendant; only intervening acts which are not reasonably foreseeable are deemed superseding causes." *Micro Enhancement Intern., Inc. v. Coopers & Lybrand*, LLP, 110 Wn. App. 412, 40 P.3d 1206, 1216 (Wash. Ct. App. 2002) (quoting *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 739 P.2d 1177 (Wash. Ct. App. 1987)). "Whether an intervening act breaks the chain of causation is a question for the trier of fact." *Michaels*, 257 P.3d at 545.

Purdue's arguments can generally be boiled down into three theories. First, that there are too many links in the chain of causation to establish a "direct relationship between the injury and the alleged wrongdoing." Dkt. #8 at 19 (citing, *inter alia*, *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 701). Purdue lists nine links in the chain of causation between its actions and the harm alleged:

> (i) Purdue's conduct as the manufacturer of OxyContin®,
>
> (ii) the later distribution of OxyContin® by wholesale distributors pursuant to 21 U.S.C. § 823(b),
>
> (iii) the further wrongful acts of multiple prescribers in Los Angeles engaged in writing medically inappropriate prescriptions of OxyContin®,
>
> (iv) the still further wrongful conduct of retail pharmacies in Los Angeles filling those "suspicious orders" of OxyContin®,
>
> (v) the separate criminal acts of a drug ring in Los Angeles obtaining illicit prescriptions of OxyContin® for illegal drug trafficking,
>
> (vi) the subsequent unlawful transportation of illicitly procured OxyContin® to Everett,
>
> (vii) the later unlawful sale and purchase of OxyContin® in Everett through an illegal "black market,"
>
> (viii) the misuse and abuse of OxyContin® by those obtaining it illegally, and

> (ix) the "expenses" incurred by Everett as a result of "individuals within Everett [who] became addicted to OxyContin" or to "heroin."

*Id.* at 18–19.  These nine links featured prominently in Purdue's oral presentation.  For Purdue's second theory, Purdue cites to *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 980-83 (9th Cir. 2008) where the Ninth Circuit found that a local government entity seeking to recover increased expenditures "for health care services and criminal justice services" based on alleged conduct that "is not itself the immediate cause of the plaintiff's injury" did not satisfy the requirement of proximate cause as a matter of law.  *Id.* at 20.  Purdue also cites to *Ass'n of Wash. Pub. Hosp. Dists.* for support that injuries that are "entirely derivative in nature," are not recoverable.  *Id.*  These cases applied a three-factor test for determining whether an injury is "too remote" to allow recovery: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."  *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 701.  Purdue's third theory is that the facts of the Complaint and judicially noticeable documents indicate that "Purdue cannot have been a proximate cause for not advising law enforcement what the public filings demonstrate law enforcement already knew."  *Id.* at 21–23.

In Response, Everett highlights the importance of foreseeability in the test for proximate cause.  Dkt. #16 at 24 (citing *Seattle Audubon v. Sutherland*, 2007 WL 1300964, at *11 (W.D. Wash. May 1, 2007)).  Everett argues that it has adequately pled that Purdue foresaw that the OxyContin it was supplying was being illegally diverted and that it would be trafficked and abused.  *Id.* at 25.  Everett cites to cases with similar theories of liability: *Ileto v. Glock Inc.*, 349

F.3d 1191 (9th Cir. 2003); *City of Seattle v. Monsanto Co.*, 2017 WL 698789 (W.D. Wash. Feb. 22, 2017); *City of Spokane*, *supra*.  Everett argues that "the plausible allegations in the Complaint are even stronger and more substantial than the allegations sustained in the recent Monsanto cases and gun cases because, as discussed above, the Complaint is supported by (among other things) internal Purdue emails and witness statements." *Id*. at 17.  Everett cites to *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) for the proposition that a "causal chain does not fail simply because it has several 'links.'" *Id*. at 24.  Responding to Purdue's second theory, Everett argues that *Canyon County* and *Ass'n of Wash. Pub. Hosp. Dists.* "involved a wildly different set of legal theories, allegations, and claims — both cases concerned antitrust and racketeering theories, allegations grounded in fraud, and federal RICO claims." *Id*. at 25.  Everett states:

> Purdue asserts that *Hospital Districts* "makes clear" that the federal standing requirements for RICO claims "also govern the Washington state law claims." Motion at 12. But a careful review of *Hospital Districts* reveals that the Ninth Circuit actually applied Washington's pattern jury instructions for proximate cause. *Compare* 241 F.3d at 707 ("in a direct sequence unbroken by any new independent cause") *with* WPI 15.01("in a direct sequence unbroken by any superseding cause"). As discussed above, here proximate cause is sufficiently alleged under Washington law for Everett's state law claims, including because the alleged injury was unquestionably foreseeable. *See City of Seattle*, 2017 WL 698789 at *7.

*Id*. at 26. Everett also argues that other courts have "recognized that the more stringent requirements for RICO claims are not applicable to common-law claims." *Id*. at 26 n.11 (citing *Sheperd v. Am. Honda Motor*, 822 F. Supp. 625, 633 (N.D. Cal. 1993) ("Parties who...are unable to satisfy RICO's stringent proximate cause and concrete loss requirements remain free to pursue common law or statutory state law claims."); *Blue Cross & Blue Shield of New Jersey, v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 579 (E.D.N.Y. 1999) ("defendants are simply

mistaken that the common law embraces a rule which bars all claims for 'indirect' injuries"); *City of St. Louis v. Am. Tobacco Co.*, 70 F. Supp. 2d 1008, 1012 (E.D. Mo. 1999) (holding that common-law claims were not "barred by the remoteness doctrine")). In response to Purdue's third theory, Everett argues that "the determination of 'issues about who knew what and when' are quintessential factual questions, which are not even appropriate for summary judgment." Dkt. #16 at 30. Everett presents several bases for disputing Purdue's version of the facts. *See id.* at 30-32.

On Reply, Purdue cites to *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017) as a case where the Supreme Court "reaffirmed the established common law principle that 'proximate cause generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct," and where the Court "reiterated that proximate cause 'requires some direct relation between the injury asserted and the injurious conduct alleged.'" Dkt. #20 at 7. Purdue argues that "the Supreme Court emphasized that the general approach should be 'not to go beyond the first step.'" *Id.* (citing *City of Miami*, 137 S.Ct. at 1306). The Supreme Court in *City of Miami* examined a similar fact pattern and held that proximate cause was not plausibly alleged based solely on foreseeability, overturning the Eleventh Circuit. Purdue argues that *Ass'n of Wash. Pub. Hosp. Dists., supra*, shows the Ninth Circuit follows the same logic. *Id.* at 10. Purdue stresses that there is no direct relation here.

The Court finds that what Purdue characterizes as nine links of causation could just as easily be characterized as four: (1) Purdue's affirmative action to continue to supply OxyContin through legal channels with knowledge that it was being diverted to a criminal drug ring, (2) the criminal conduct of the drug ring transferring and selling OxyContin, (3) the misuse and abuse of individual users located in Everett, (4) injuries to Everett bringing this action on behalf of the public. Although not as direct as a car accident or slip-and-fall case, this causal chain is still a

"direct sequence," and it is facially plausible that the involvement of third parties, even criminals, was reasonably foreseeable given the extensive facts of Purdue's knowledge in the pleadings. Purdue's citation to *Canyon County* and *Ass'n of Wash. Pub. Hosp. Dists.* are inapposite, as those cases applied a proximate cause standard from RICO law. Although *Ass'n of Wash. Pub. Hosp. Dists.* appears to have applied the same standard to a state law negligence claim, no Washington state court has subsequently applied this standard to tort or CPA claims. The Court agrees with Everett's interpretation of that case and its limited application. To the extent that Purdue presents its own facts of what Everett knew of the criminal activity, this may be irrelevant given that it was Purdue's tortious activity that forms the basis for this claim, and Everett alleges that full knowledge of Purdue's tortious activity was not revealed until the Los Angeles Times investigation of 2016. In any event, Everett is correct that these questions of fact cannot be resolved at this stage. Given all of the above, the Court finds that Everett has adequately pled proximate cause to survive this Motion to Dismiss.

### D. Cognizable Injury

Purdue argues that "municipal costs" incurred in the rendering of public services are not a cognizable form of tort injury. Dkt. #8 at 24 (citing *City of Flagstaff v. Atchison, Topeka and Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983); *Canyon County*, 519 F.3d at 979). Purdue also argues that "'expense' claims of this type, derivative of addiction-treatment, addiction-related illnesses, or related injuries, do not constitute 'injuries to business or property' as required under the CPA." *Id.* at 25 (citing, *inter alia*, *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 705).

In Response, Everett argues that *City of Flagstaff* was interpreting Arizona law, and that Purdue fails to identify any authority adopting the "municipal cost recovery rule" in Washington. Dkt. #16 at 33 (citing *City of Los Angeles v. Citigroup Inc.*, 24 F. Supp. 3d 940,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 13

948 (C.D. Cal. 2014)).  Everett cites to *City of Seattle* and *City of Spokane*, *supra*, as cases where municipal injuries were present and the cases were allowed to proceed.  *Id*.  Everett presents several other bases for not applying the "municipal cost recovery rule" in this case.  *Id*. at 33-34.  With regard to its CPA claim, Everett argues that the Ninth Circuit has held that "the limitation that a defendant's conduct cause injury in 'business or property' has only been deployed to exclude suits for personal injury and emotional distress."  *Id*. at 34 (citing *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016)).

On Reply, Purdue acknowledges that no Washington court has addressed the municipal cost recovery rule, but argue that public policy is consistent with its application.  Dkt. #20 at 16. Purdue does not address Everett's arguments as to its CPA claim injuries.

The Court finds that Purdue has cited no basis under Washington law for dismissing Everett's claims for lack of cognizable injury, and that Everett has presented sufficient case law to create a facially plausible basis for all of its claims to proceed based on the pled injuries.

### E. Purdue's Statute of Limitations Defense

Purdue argues that, given the claims in this case, the longest statute of limitations period is four years in connection with the CPA claim.  Dkt. #8 at 26 (citing RCW § 19.86.120).[2] Accordingly, because the Complaint was filed January 19, 2017, claims based on conduct predating January 19, 2013, are time-barred.  Purdue argues that the only factual allegations set forth in the Complaint predate 2013, *e.g.* the Lake Medical criminal conspiracy in Los Angeles that began in 2008 and was "shut down in 2010," and Purdue's negligent conduct based on internal Purdue correspondence from 2009.  Dkt. #1-1 at ¶¶ 41–43, 48–53, 55.  Even if the

---

[2] Gross negligence and negligence fall within the three-year catchall provision of RCW § 4.16.080(2).  *See Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 29, 384 P.3d 232 (2016); *Woods View II, LLC v. Kitsap Cty.*, 188 Wn.App. 1, 19, 352 P.3d 807 (2015).  Unjust enrichment also has a three-year statute of limitation.  *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 738, 197 P.3d 686 (2008) (citing RCW § 4.16.080(3)).  Public nuisance has a two-year statute of limitation.  *Wallace v. Lewis Cty.*, 134 Wn. App. 1, 19, 137 P.3d 101 (2006).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 14

Court measured the limitations period under the discovery rule,[3] Purdue argues that Everett "was positioned, through the exercise of appropriate due diligence, to determine whether the actions of Purdue, or others in the distribution chain, gave rise to a cause of action" no later than September 28, 2011. *Id.* at 26–27. Purdue argues that once a party "is placed on notice by some appreciable harm occasioned by another's wrongful conduct," the party must make further diligent inquiry to ascertain the scope of the actual harm and is "charged with what a reasonable inquiry would have discovered." *Id.* at 27 (citing *1000 Virg. Ltd. P'Ship. v. Vertecs Corp.*,158 Wn.2d 566, 581, 146 P.3d 423 (2006)). Purdue argues that the discovery rules apply in situations where there are "truly latent facts" not where, as here, the underlying facts were matters of public record. *Id.* at 27 n.11 (citing *Pruss v. Bank of Am. NA*, No. C13-1447-MJP, 2013 WL 5913431, at *3 (W.D. Wash. Nov. 1, 2013).

In Response, Everett argues first that it is immune from the statute of limitations under Washington law because it is a municipality acting in a sovereign capacity. Dkt. #16 at 35–36 (citing RCW 4.16.160; *Louisiana-Pac. Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1582 (9th Cir. 1994); *City of Seattle v. Monsanto*, 2017 WL 698789 at *4 ("When a municipality 'assists in the government of the state as an agent of the state to promote the public welfare generally,' that municipality acts in a sovereign capacity"); *Washington State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 165 Wn.2d 679, 694 (2009)). Everett argues that it is acting in its sovereign capacity "to promote the public welfare" and "for the common good." *Id.* Next, Everett argues that "Purdue fails to demonstrate how the face of the Complaint proves — as a matter of law — that Everett (as opposed to various federal law

---

[3] Washington first adopted the discovery rule in *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969). The limitation period begins to run when the factual elements of a cause of action exist and the injured party knows or should know they exist, whether or not the party can then conclusively prove the tortious conduct has occurred. A smoking gun is not necessary to commence the limitation period. *Beard v. King County*, 76 Wn. App. 863, 868, 889 P.2d 501, 504 (1995).

enforcement agencies) had the requisite knowledge of Lake Medical or Lawson sufficient for the accrual of any cause of action" and that Purdue has not proven "that Everett had the requisite knowledge of **Purdue's misconduct** in connection with Lake Medical or Lawson." *Id.* at 36 (emphasis in original). Everett argues that a 12(b)(6) motion is premature if based on facts outside the Complaint. Importantly, Everett also argues that it had three years from July 2016 under the discovery rule because "the connection between, and significance of, **Purdue's misconduct** (e.g., Purdue's actual knowledge of diversion) in relation to Lake Medical and Lawson was not publicly exposed until (at the earliest) July 2016, when the Los Angeles Times published a multi-part series concerning its investigation of Purdue, Lake Medical, and Lawson." *Id.* at 37 (emphasis in original). Everett argues that the dismissal is only appropriate when "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the [alleged] conduct." *Id.* at 38 (citing *Swartz v. Deutsche Bank*, 2008 WL 1968948, *7 (W.D. Wash. May 2, 2008)). Everett argues this test is not met because "none of the documents on which Purdue requests judicial notice address **Purdue's misconduct** in connection with Lake Medical or Lawson" and because "the statute does not begin to run until the plaintiff knows or with reasonable diligence should know that the defendant was the responsible party." *Id.* (citing *Allyn v. Boe*, 87 Wn. App. 722, 736 (1997)) (emphasis in original). Everett also cites out-of-circuit cases for the proposition that "courts have refused to find that matters in the so-called 'public record' are sufficient notice." *Id.* at 39. Everett argues that, at the very least, questions of fact preclude dismissal based on this defense.

Purdue first addresses the sovereign capacity argument in its Reply. Purdue argues that such benefit only applies when a municipality sues based on "the exercise of powers traceable to the sovereign powers of the states which have been delegated to the municipality," but not for "a municipality's proprietary functions" which are "not for the benefit of the State and thus are

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 16

not exempt from applicable limitations." Dkt. #20 at 17 (citing *City of Seattle*, 2017 WL 698789 at \*4; *City of Moses Lake v. United States*, 430 F. Supp. 2d 1164, 1177-78 (E.D. Wash. 2006)). Purdue also argues that the 2007 Consent Judgment between the State of Washington and Purdue preempts this suit and precludes Everett from acting in the state's capacity. *Id*. at 17–18. Purdue next addresses Everett's discovery rule arguments. Purdue argues that Everett did not act diligently to discover the source of its alleged harm as soon as the harm was apparent, and that this is dispositive. *Id*. at 18 (citing *Beard*, 76 Wn. App. at 868). Purdue argues that such diligence would have led Everett to discover the connection to Purdue via "information in court filings and public sources." *Id*. at 19.

The Complaint adequately pleads Everett discovered the acts giving rise to its causes of action within the last three years. It was not enough for Everett to know that criminal activity was occurring, or that that activity was leading to the alleged injuries; Everett's discovery did not occur as a legal matter until it became aware of *Purdue's* negligent and otherwise actionable conduct. Whether or not Everett acted diligently in discovering the source of its alleged harm is a factually intensive inquiry. Given this, it is entirely premature for the Court to dismiss Everett's claims based on Purdue's affirmative defenses. Because the discovery rule presents a dispositive basis for denying Everett's motion to dismiss based on the statute of limitations, the Court need not address Everett's sovereign capacity arguments.

**F. Other, Additional Grounds for Dismissal of Certain Claims**

Purdue also argues that Everett's public nuisance claim, undue enrichment claim, and claim for punitive damages are not supported by Washington law. Purdue argues that nuisance is statutorily defined under Washington law to require interference with the comfortable enjoyment of [] life and property." Dkt. #8 at 28 (citing RCW § 7.48.010; *Mustoe v. Ma*, 193 Wn. App. 161, 168, 371 P.3d 544 (2016) ("A nuisance is an unreasonable interference with

another's use and enjoyment of property.")). However, Everett does not allege that Purdue's actions have interfered with property or a property interest. Purdue also challenges whether Everett can bring a nuisance claim for acts that occurred in California. With regard to unjust enrichment, Purdue argues that it has not received a benefit from Everett as required under Washington law. *Id.* at 29 (citing *Hoffer v. State*, 110 Wn.2d 415, 434-35, 755 P.2d 781 (1988)). Finally, with regard to punitive damages, Purdue argues that Everett cannot bring a separate count for punitive damages under the laws of the States of Connecticut or California. *Id.* at 30 (citing, *inter alia*, *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 638 n.14, 278 P.3d 173 (2012). Purdue notes that, even if Everett could seek punitive damages under California or Connecticut law, it would not be a separate cause of action but a remedy. *Id.* at 30–31.

In Response, Everett argues that the nuisance statute does not require interference with real property and that it is not dispositive that the acts at issue occurred in California, but Everett does not cite to law explicitly supporting a nuisance claim for the type of acts at issue in this case. Dkt. #16 at 39–40. Everett appears to agree that Purdue has not directly received a benefit from Everett as required for unjust enrichment, but argues that "Purdue has profited immensely from its supply of OxyContin into the black market," and that case law supports a city bringing an unjust enrichment claim were it has had to pay the "so-called externalities" of a defendant's conduct. *Id.* at 41 (citing *City of Los Angeles v. JPMorgan Chase & Co.*, 2014 WL 6453808, at *10 (C.D. Cal. Nov. 14, 2014)). Everett argues that "if a state that recognizes punitive damages has an interest in deterring the defendant's misconduct, a claim for punitive damages under that state's law can be asserted in a Washington." *Id.* (citing *Singh v. Edwards Lifesciences Corp.*, 151 Wn. App. 137, 148 (2009)).

On Reply, Purdue points out that Everett "cannot cite a single Washington case applying a nuisance theory in the absence of interference with property." Dkt. #20 at 19. With regard to punitive damages, Purdue argues that Everett must show that California or Connecticut has a more "significant relationship" to the issue of punitive damages than Washington, and that Everett alleges no meaningful facts sufficient to show this relationship. *Id.* at 20 (citing *Barr v. Interbay Citizens Bank*, 96 Wn.2d 692, 635 P.2d 441, 443 (1981). Purdue does not address Everett's arguments as to unjust enrichment.

The Court first finds that Purdue has failed to show that Everett's unjust enrichment claim fails the facial plausibility test given the case law cited by Everett. As to the other claims, the Court agrees with Purdue and will dismiss Everett's public nuisance claim for failure to allege a connection to property and dismiss Everett's claim to punitive damages for failing to show some other state has a more significant relationship to these claims than Washington State, where the injuries clearly occurred. Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court finds that Everett could easily allege consistent facts that cure the above deficiencies and will grant leave to amend. However, the Court notes that Everett may not seek punitive damages as a stand-alone cause of action under California or Connecticut law, and must seek punitive damages as a remedy.

## IV.    CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss (Dkt. #8) is GRANTED IN PART AND DENIED IN PART as set forth above. Plaintiff is granted leave to file an

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 19

Amended Complaint curing the above-mentioned deficiencies **no later than thirty (30) days** from the date of this Order.  Failure to file an Amended Complaint within this time period will result in dismissal of Plaintiff's public nuisance and punitive damages claims.  All other claims will remain undisturbed.

DATED this 25 day of September, 2017.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE